**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| TIMOTHY DIPIRRO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VAIL RESORTS, INC. and THE VAIL CORPORATION d/b/a VAIL RESORTS MANAGEMENT COMPANY,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Timothy DiPirro, on behalf of himself and all others similarly situated, brings this class action against Vail Resorts, Inc., and The Vail Corporation d/b/a Vail Resorts Management Company (collectively, "Defendants" or "Vail Resorts"). Plaintiff alleges the following based upon his personal knowledge and upon information and belief, including investigation conducted by its attorneys.

## INTRODUCTION

1. Vail Resorts touts itself as "the premier mountain resort company in the world" and to ski Vail, its premier resort, is "like nothing on earth™." Vail Resorts sold a variety of daily and season passes for the 2019-20 season, including the Epic Pass, which it marketed as "the best value and variety for unlimited skiing and riding."[1]

[1] https://www.epicpass.com/info/epic-for-everyone-release.aspx (last accessed on May 20, 2020).

2. Vail Resorts announced in mid-March that due to the spread of COVID-19 it had closed all of its North American ski resorts for the remainder of the 2019-20 ski season ("Vail Closure"). Vail Resorts told its customers that "all season pass and Epic Day Pass products…are non-refundable and non-transferable to another season."[2]

3. Plaintiff brings this class action suit on behalf of himself and all others similarly situated to seek redress for Defendants' refusal to refund fees after it closed all of its North American ski resorts, well short of the promised duration of the ski season. Vail Resorts collected fees from skiers, snowboarders (referred to herein as "riders"), and others, but then deprived them of the promised "unlimited skiing and snowboarding" from October 2019 to June 2020.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this controversy pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (a) the proposed Class, defined below, consists of more than one hundred members; (b) the parties are minimally diverse, as members of the proposed Class are citizens of states different than Defendants' home state; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendants because Defendants' principal places of business are within this District.

[2] https://www.snow.com/info/message-to-our-guests.aspx (last accessed April 17, 2020).

7. Venue is proper in this District under 28 U.S.C. § 1391 because Defendants maintain their principal place of business within the District and a substantial part of the events giving rise to Plaintiff's claims occurred here.

## PARTIES

8. Plaintiff Timothy DiPirro is a citizen of Colorado and resides in Centennial, Colorado. Mr. DiPirro purchased an Epic Local Pass from Defendants for the 2019-20 season. Due to the Vail Closure, Plaintiff DiPirro was prevented from receiving the full benefit of his Epic Local Pass.

9. Defendant Vail Resorts, Inc. is a Delaware corporation, with its principal place of business in Broomfield, Colorado. Vail Resorts, Inc., among other things, owns and operates mountain resorts and urban ski areas.

10. Defendant The Vail Corporation d/b/a Vail Resorts Management Company, is a Colorado corporation, with its principal place of business in Broomfield, Colorado. The Vail Corporation is a wholly-owned subsidiary of Vail Resorts, Inc.

## FACTUAL ALLEGATIONS

11. Vail Resorts, Inc. through its subsidiaries operates 37 destination mountain resorts and regional ski areas, 34 of which are located in North America ("North America ski resorts"). Vail Resorts touts itself as "the premier mountain resort company in the world."[3]

12. For the 2019-20 ski season, Defendants sold the Epic Pass, Epic Local Pass, and Epic 4-Day Pass. Defendants represented that "the Epic Pass and Epic Local Pass continue to offer

[3] http://www.vailresorts.com/Corp/info/who-we-are.aspx (last accessed May 20, 2020).

the best value and variety for unlimited skiing and riding."[4] Defendants advertised that the Epic Pass "provides unlimited, unrestricted access to all of the Company's owned resorts and additional access to partner resorts around the world." Defendants sold the Epic Pass for $939 for the 2019-20 season.

13. According to Defendants, the Epic Local Pass offered "[s]kiers and riders willing to navigate around a few peak dates…access to many of the same destinations." Defendants sold the Epic Local Pass for prices starting at $699 for the 2019-20 season. The Epic Local Pass carried certain blackout dates and limited the purchaser's use at Vail Resort and Beaver Creek Resort to a cumulative total of ten days.

14. Because the individual daily rates for ski and snowboard passes are high – for instance at Vail resort over $200 – customers who anticipate skiing or riding a number of days will assess their own needs and purchase the appropriate Epic Pass. Many people take Spring Break ski vacations in March and April. For them, the cost effective way to purchase lift tickets was to purchase one type of the Epic Pass.

15. However, to solidify its cash flow, Defendants required customers to purchase the Epic Pass or Epic Local Pass no later than September 2019. Thus, Defendants received nearly 100% of their 2019-20 season lift ticket revenue from Plaintiff and Class Members before the ski season even began.

16. Defendants also offered the Epic Day Pass for sale in 2019-20. Defendants sold the Epic Day Pass to customers who could select the number of days, from one to seven, and whether

[4] https://www.vail.com/plan-your-trip/lift-access/passes/epic-pass.aspx (last accessed April 17, 2020)

or not to add holiday access. Purchasers "can use their customized Epic Day Pass anytime through the season at any of the Company's North American owned resorts" and would be given access to other resorts if they purchased four or more days. Defendants' prices for Epic Day Passes for adults ranged from $106 to $731 and for children from $55 to $380, depending on the number of days and holiday restrictions.

17. On June 3, 2019, Defendants published an article on its website titled "Earlier Openings, Longer Season, and Enhanced Guest Experience for the 2019-20 Winter Season." In the article, Defendants stated that they were "providing Epic Pass holders and all skiers and snowboarders in Colorado with one of the longest ski and snowboard seasons in the country." Moreover, Defendants stated, "With Keystone opening earlier and Breckenridge extending its winter seasons into June, Epic Pass holders can enjoy skiing and snowboarding in Colorado from October through May."[5]

18. On March 14, 2020, without any prior notification to Plaintiff or Class Members, Defendants initiated the Vail Closure by abruptly suspending all operations at their North America ski resorts and retail stores for one week promising an update in the next few days. Two days later, on March 17, 2020, Defendants announced "that all of its North American resorts and retail stores will remain closed for the 2019-20 winter ski season amidst the continued challenges associated with the spread of coronavirus (COVID-19)."[6]

[5] http://blog.vail.com/capital-improvements-underway-at-vail-beaver-creek-breckenridge-keystone-and-crested-butte-leading-to-earlier-openings-longer-season-and-enhanced-guest-experience-for-the-2019-2020-winter-season/ (last accessed May 20, 2020).
[6] https://www.snow.com/info/vail-resorts-covid-19-resort-closing-update.aspx (last accessed May 20, 2020)

19. By closing all of their North American ski resorts effective March 15, 2020, Defendants deprived Plaintiff and Class Members of over 30% of the ski and snowboard season.

20. Defendants also published a list of Frequently Asked Questions in connection with the Vail Closure. One of the questions asked, "How does the closure impact my season pass or Epic Day Pass?" Defendants answered, "To the extent that any of our resorts re-open during the season, your pass will be valid. Pursuant to the terms of all season pass and Epic Day Pass products, they are non-refundable and non-transferable to another season. We will be reviewing these policies and providing any updated guidance in the coming weeks."[7]

21. Furthermore, while the Defendants' Epic Pass website at www.snow.com provided a "Refund" tab, once clicked, it reiterates that there are no refunds for the Epic Passes. Additionally, Defendants maintain a Call Center for its Epic Pass customers. Defendants shuttered that Call Center concurrent with their shutdown of the ski resorts. Consequently, no holder of an Epic Pass can even discuss their situation or get details of why Defendants are not providing any refunds for the Passes.

22. As part of the North America ski resort shutdown, Defendants eliminated virtually all employees to greatly reduce their operating costs.

23. Thus, Defendants have eliminated virtually all of their costs of operating their North American ski resorts, yet have refused to refund the costs paid for the Epic Passes by Plaintiff and the Class Members, which Passes were purchased with Defendants' representations they could be used for the full duration of the ski and snowboard season through June 2020.

---

[7] https://www.snow.com/info/message-to-our-guests.aspx (last accessed April 17, 2020).

24. Instead, Defendants have retained the fees paid by Plaintiff and Class Members for their Epic Passes even after Defendants closed their resorts after only about two-thirds of the ski season had occurred. Defendants have not refunded the Pass fees.

25. Defendants offered 2019-20 Pass holders a so-called "Credit,"—a discount of between 20-80%, depending on the number of days the Pass holder used the 2019-20 Pass—to be applied towards the price of 2020-21 Pass. Defendants offered the maximum Credit of an 80% discount on the price of a 2020-21 Pass only if the Pass holder used their Pass zero days during the 2019-20 season, and the minimum Credit of a 20% discount if the Pass older used their Pass five or more days during the 2019-20 season. Defendants stated that Pass holders must purchase a 2020-21 Pass by September 7, 2020 in order to redeem this offer.[8]

26. Defendants included the following "Release of Claims" in their Terms and Conditions connected to the Credit:

> If you choose to use your Credit toward the purchase of a 2020/2021 pass, you are thereby voluntarily and knowingly agreeing, to the maximum extent permitted by applicable law, to waive, release, and forfeit any and all claims and actions you have or may have against Vail Resorts, or any of its resorts, subsidiaries, affiliates, or Partner Resorts and any of our or their respective officers, directors, employees, contractors, representatives, or agents (collectively, the "Vail Resorts Parties") and any associated losses, damages and expenses (including attorneys' fees), that relate to, arise out of, or may arise out of the operation or closure of one or more of our resorts during the 2019/2020 season, including claims you may have for any other or additional form of refund, credit, or compensation for your inability to use your 2019/2020 pass as a result of the closure of any of our resorts during the 2019/2020 season. We hereby advise that class action lawsuits have been filed against the Vail Corporation on behalf of certain pass holders in connection with resort closures during the 2019/2020 ski season seeking refunds and other alleged damages. These

[8] https://www.epicpass.com/info/2019-2020-pass-holder-credit.aspx (last accessed May 14, 2020).

Terms and this release in connection with the Credit will affect any rights you have in connection with those lawsuits and any similar lawsuits that may be filed.[9]

27. The proposed "Release of Claims" is uninformed, unenforceable and unlawful because Defendants failed to describe any information about the class action lawsuits, the relief sought, counsel identity or contact information, and other details to make a full disclosure.

28. On their website, Defendants stated that Pass holders would receive an email on May 13, 2020 containing their individualized Credit offer information. On information and belief, Defendants delivered the emails to Plaintiff and Class Members on May 13, 2020, and in the emails Defendants provided the Credit amount offered and a code that the Pass holder was to use to receive the discount when he or she purchased a Pass for the 2020-21 season.

29. In order to obtain the alleged "benefit" of a Credit for the Passes, Plaintiff and Class Members must spend additional money to buy a separate Pass that they may neither want nor use. If Plaintiff and Class Members do not spend additional money to purchase a 2020-21 Pass, then they will receive no "benefit" or Credit at all. Amidst unprecedented unemployment and economic uncertainty, Defendants are refusing to refund the amount of money that Plaintiff and Class Members overpaid for their Passes and, instead, continue to retain the full price that Plaintiff and Class Members paid for their 2019-20 Passes.

30. Plaintiff seeks relief in this action individually, and on behalf of all of Defendants' customers nationwide that purchased annual Epic and Epic Local Passes for the 2019-2020 season or Epic Day Passes for the 2019-2020 season who, as of March 15, 2020, had not used all of the days remaining on their Epic Day Passes. Plaintiff seeks relief for himself and all Class Members

---

[9] https://www.epicpass.com/info/2019-2020-pass-holder-credit.aspx (last accessed May 14, 2020).

for Defendants' breach of contract, breach of express warranties, negligent misrepresentation, and unjust enrichment, as well as violations of state consumer protection statutes.

## CLASS ALLEGATIONS

31. Plaintiff brings this action on behalf of himself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages on behalf of himself and Class Members nationwide:

> All persons in the United States who purchased for the 2019-20 season an Epic Pass, or an Epic Local Pass, or who purchased an Epic Day Pass with days remaining on the Day Pass for use at a Vail North American ski resort.

32. Excluded from the Class are: a) any Judge or Magistrate presiding over this action and members of their families; b) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees; c) persons who properly execute and file a timely request for exclusion from the Class; d) the legal representatives, successors or assigns of any such excluded persons; and e) all persons who have previously had claims finally adjudicated or who have released their claims against Defendants similar to those alleged herein.

33. If necessary or alternatively, Plaintiff also seeks to represent a subclass of individuals residing in Colorado who purchased passes from Defendants (the "Colorado Subclass").

34. Collectively, unless otherwise so stated, the above-defined class and subclass are referred to herein as the "Class."

35. Plaintiff reserves his right to amend the Class definitions if discovery or further investigation reveals that any Class should be expanded or narrowed, divided into additional subclass under Rule 23(c)(5), or modified in any other way

36. While the exact number and identities of the Class Members are unknown at this time, and can only be ascertained through appropriate discovery, on information and belief, the Class is so numerous that joinder of all Class Members is impracticable. Also, on information and belief, Vail Resorts maintains electronic records of all Epic Pass holders.

37. Common questions of law and fact exist as to all members of the Class. Such questions of law and fact common to the Class include, but are not limited to, whether Defendants breached their contract and/or their warranty with their customers, whether Defendants negligently made misrepresentations, whether Defendants were unjustly enriched, and whether Defendants violated certain state consumer protection statutes.

38. Plaintiff's claims are typical of the claims of all Class Members because such claims arise from the Defendants' wrongful conduct, as alleged above. Plaintiff has no interests that conflict with the interests of the other Class Members.

39. Questions of law and fact common to both Plaintiff and Class Members predominate over any questions affecting only individual Class Members, including legal and factual issues relating to liability and damages.

40. Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained competent counsel experienced in complex commercial litigation and class actions to represent himself and the Class.

41. Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

42. Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class members' claims compared to the anticipated costs of the litigation, it is likely that only a few, if any, Class members could afford to seek legal redress for the harms caused by Defendants' actions.

## CLAIMS FOR RELIEF

### COUNT I
### Nationwide Class
### Breach of Contract

43. Plaintiff hereby repeats and realleges the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

44. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants.

45. Defendants offered the Epic Passes to Plaintiff and Class Members to provide access, including skiing and snowboarding, to its North America ski resorts for the entire season to June 2020 in exchange for Plaintiff and Class Members payment in full of Pass fees.

46. Each Plaintiff and all Class Members accepted Defendants' contractual offer and fully performed and complied with all conditions precedent including full payment to Defendants for the Passes. For the Epic Pass and Epic Local Pass, Defendants received all Pass revenue by the end of September 2019 for the 2019-20 ski and snowboard season.

47. Defendants breached these contracts by retaining Plaintiff's and Class Members' Pass fees while all of their North America ski resorts remain closed, terminating over 30% of the ski and snowboard season that Defendants contractually promised. Plaintiff and Class Members have suffered an injury through the payment of Pass fees, without a refund, while not having the contractually promised duration of access to Defendants' North American ski resorts.

**COUNT II**
**Nationwide Class**
**Breach of Express Warranty**

48. Plaintiff hereby repeats and realleges the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

49. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants.

50. In connection with its sale of Epic Passes, Defendants made an express warranty that customers would have unlimited access to their North America ski resorts, or for the Epic Day Passes, that they would have access to Defendants' North America ski resorts for a specified number of days from October 2019 to June 2020.

51. Defendants' affirmation of fact and promise in their marketing and signage became part of the basis of the bargain between Defendants and Plaintiff and Class Members, thereby creating express warranties that the services would conform to Defendants' affirmation of fact, representations, promise, and description.

52. Plaintiff and all Class Members fully performed and complied with all conditions precedent including full payment to Defendants for the Passes.

53. Defendants breached their express warranty by failing to provide unlimited access for the duration of the warranted ski and snowboard season to their North America ski resorts, and, for the Epic Day Passes, by failing to provide access to those resorts when customers had days remaining on their Epic Day Passes.

54. Plaintiff and the Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Class Members' Pass holder fees while all of their North America ski resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

**COUNT III**
**Nationwide Class**
**Negligent Misrepresentation**

55. Plaintiff hereby repeats and realleges the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

56. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants.

57. Defendants misrepresented that customers would have unlimited access to its North America ski resorts for the duration of the represented ski and snowboard season to June 2020, or, for the Epic Day Passes, that they would have access to Defendants' North America ski resorts for a specified number of days during that entire season.

58. Defendants made these representations without knowledge of their truth or veracity.

59. Defendants negligently misrepresented and/or negligently omitted material facts about its Passes and services that its North America ski resorts would unconditionally be available for the entire 2019-20 ski and snowboard season to June 2020.

60. The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class Members to purchase Defendants' Epic Passes.

61. As a result of Defendants' misrepresentations, Plaintiff and all Class Members made full payment to Defendants for Epic Passes.

62. Plaintiff and Class Members would not have purchased Defendants' Epic Passes, or would not have purchased the services on the same terms, if the true facts had been known.

63. The negligent actions of Defendants caused damage to Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT IV**
**Nationwide Class**
**Unjust Enrichment**

64. Plaintiff hereby repeats and realleges the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

65. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

66. Plaintiff and Class Members conferred benefits on Defendants by paying in advance and in full for the Epic Passes they purchased from Defendants.

67. Defendants have knowledge of such benefits and accepted those in full payments knowing the representations they made and services they were to provide in consideration for those payments, namely, (a) for the Epic Pass holders, unlimited skiing and riding at all North America ski resorts to June 2020; (b) for the Epic Pass holders, unlimited skiing and riding at all North America ski resorts to June 2020 with certain limitations at premier resorts and blackout dates irrelevant to this claim; and (c) for the Epic Day Pass, skiing and riding at the specified North America ski resorts for the number of days, from one to seven, paid for the duration of the 2019-20 season to June 2020. Defendants developed the Epic Pass program with the specific purpose to obtain nearly 100% of its ski revenues by the end of September, before the ski season began.

68. As a result of the Vail Closure, Defendants received 100% of the revenues for their Passes sold to Plaintiff and Class Members, but Defendants cancelled over 30% of the ski season depriving Plaintiff and Class Members of benefits for which they paid Defendants in full.

69. Defendants eliminated the vast majority of their employees and cut other operating costs that they otherwise would have incurred had Defendants kept their North America ski resorts

open for the full 2019-20 ski and snowboard season to June 2020, as they represented. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' Epic Pass fees, while eliminating the services purchased by Plaintiff and Class Members with those Pass fees. Retention of those moneys under these circumstances is unfair, unjust and inequitable because Defendants are retaining its customers Pass fees while all of their North America ski resorts remain closed.

70. Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unfair, unjust, and inequitable, Defendants must pay restitution to Plaintiff and Class Members for their unjust enrichment, as ordered by the Court.

**COUNT V**
**Nationwide Class**
**Violation of Colorado Consumer Protection Act,**
**Colo. Rev. Stat. §§ 6-1-101, *et seq.***

71. Plaintiff hereby repeats and realleges the allegations contained in paragraphs 1 through 40 above of this complaint, as if fully alleged herein.

72. Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class against Defendants or, alternatively, a Colorado Subclass.

73. Defendants are each a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

74. Plaintiff and Class Members, as well as the general public, are actual or potential consumers of the products and services offered by Defendants or successors in interest to actual consumers.

75. Defendants engaged in deceptive trade practices in the course of their business, in violation of Colo. Rev. Stat. § 6-1-105(1), including, but not limited to, by advertising nationwide

that purchasers of their Epic Passes have unlimited, unrestricted skiing and snowboarding at Defendants' North America ski resorts for the entire 2019-20 ski season to June 2020.

76. By engaging in deceptive trade practices in the course of their business and vocation, directly or indirectly affecting the people of Colorado and all other states where Epic Passes were sold, Defendants violated Colo. Rev. Stat. § 6-1-105(g) by representing that goods and services are of a particular standard or quality when they knew or should have known that they are of another.

77. In particular, Defendants represented that the purchasers of Epic Passes would obtain "the best value and variety for unlimited skiing and riding" at their North America ski resorts for the entire ski season through at least May 2020, when in fact Defendants knew or should known that in the event that they closed all of their North America ski resorts before the end of the ski season they would retain fees paid to Defendants for the Passes.

78. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers if Defendants failed to keep their North America ski resorts open for the duration of the ski and snowboard season as promised.

79. Plaintiff and the Class Members acted reasonably when they purchased Defendants' Passes based on their belief that Defendants' representations were true and lawful.

80. Defendants' actions violate Colorado's Consumer Protection Act, and recklessly disregarded Plaintiff and Class Members' rights by accepting Plaintiff's and Class Members' payments for the Epic Passes, which were represented to allow Pass holders the ability to ski and snowboard to June 2020, but by prematurely closing its resorts and refusing to refund the full fees paid by Plaintiff and Class Members.

81. As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the Class Members suffered injuries to their legally protected interests, including because: (a) they would not have purchased or paid for Defendants' Passes absent Defendants' representations and omission of a warning that they would retain Class Members' Pass holder fees while all Vail North America ski resorts are closed; (b) they would not have purchased Passes on the same terms absent Defendants' representations and omissions; (c) they paid a price premium for Defendants' Passes based on Defendants' misrepresentations and omissions; and (d) Defendants' Passes did not have the characteristics, benefits, or quantities as promised.

82. Defendants' deceptive trade practices significantly impact the public because Defendants operate at least 34 North American ski resorts and, on information and belief, sell a large number of ski passes to consumers located in Colorado and every other state.

83. Plaintiff and the Class Members seek all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages (for Defendants' bad faith conduct); injunctive relief; and reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Plaintiff's attorneys as Class Counsel to represent the Class Members;

b) For an order certifying the Colorado Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Colorado Subclass, and Plaintiff's attorneys as Class Counsel to represent the Colorado Subclass's Members.

c) For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

d) For an order finding in favor of Plaintiff, the Class, and the Colorado Subclass, on all counts asserted herein;

e) For compensatory damages in an amount to be determined by the Court and/or jury;

f) For prejudgment interest on all amounts awarded;

g) For an order of restitution and all other forms of equitable monetary relief;

h) For injunctive relief as pleaded or as the Court may deem proper; and

i) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: May 22, 2020

*/s/ Daniel E. Gustafson*
Daniel E. Gustafson (MN #202241)
Daniel C. Hedlund (MN #258337)
Joshua J. Rissman (MN #391500)
Mickey L. Stevens (MN #398549)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
jrissman@gustafsongluek.com
mstevens@gustafsongluek.com

***Attorneys for Plaintiff Timothy DiPirro and the Proposed Class***